**UNITED STATES of America, Plaintiff,**

v.

**Walter Curtis KEAL, Sr., doing business as Great Lakes Driveaway Corporation, and as Curtis Keal Transport Company, Defendant.**

Civ. No. 29366.

United States District Court
N. D. Ohio, E. D.

March 21, 1956.

Supplemental Opinion March 26, 1956.

Sumner Canary, U. S. Atty., Loren E. Van Brocklin, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Wm. H. Rosenfeld, Cleveland, Alfred Palay, Cleveland, Ohio, for defendant.

JONES, Chief Judge.

During World War II the Curtis Keal Transport Company was engaged in transporting military vehicles for the Government.

In 1939 defendant, then doing business as the Great Lakes Driveaway Corporation, issued and filed with the Interstate Commerce Commission Tariff MF I.C.C. No. 3 (Plaintiff's Exhibit 4) in which tariff were set forth the rates to be charged the public for transporting vehicles.

By Supplement No. 10 (Plaintiff's Exhibit 4), effective January 20, 1943, defendant attempted to exclude transportation of military vehicles for the Government from the hitherto published rates in MF I.C.C. No. 3.

To cover transportation of military vehicles for the Government, defendant submitted Government Rate Schedules Nos. 1, 2, and 3 (Defendant's Exhibits A, B, C) to the Chief of Transportation of the War Department. The rates set forth in said Government Rate Schedules varied from those originally published in MF I.C.C. No. 3. The Government Rate Schedules were never filed with the Interstate Commerce Commission.

The Government brings this action to recoup alleged overcharges in the sum of $208,418.99 paid defendant under Gov-

ernment Rate Schedules Nos. 1, 2, 3. It is the Government's contention that said Government Rate Schedules never having been filed with or approved by the Interstate Commerce Commission are not binding on the Government and represent an overcharge of the rates duly filed and published in MF I.C.C. No. 3.

The law, as stated in Section 317 of Title 49, U.S.C.A., is clear and unequivocal and speaks for itself. Said section provides, in part:

"Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing *all* the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or foreign commerce   *   *   *.

"(b) No common carrier by motor vehicle shall charge or demand or collect or receive a *greater* or less or different compensation *for transportation or for any service in connection therewith* between the points enumerated in such tariff *than the rates, fares, and charges specified in the tariffs in effect at the time;*   *   *   *.

"(c) No change shall be made in *any rate,* fare, charge, or *classification, or any rule, regulation, or practice affecting such rate, fare, charge, or classification, or the value of the service thereunder,* specified in any *effective tariff of a common carrier by motor vehicle,* except after 30 days' notice of the proposed change filed and posted in accordance with subsection (a) of this section.   *   *

"(d) No common carrier by motor vehicle, unless otherwise provided by this chapter, shall engage in the transportation of passengers or property unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter."   (Emphasis supplied.)

It is established that defendant's Government Rate Schedules Nos. 1, 2, 3 were never filed with the Interstate Commerce Commission as is necessary under Section 317 (supra). It is also established that any proposed changes in rates "specified in any effective tariff" must be filed with and approved by the Interstate Commerce Commission. It would follow that unless changed by sanction of the Interstate Commerce Commission existing rates would remain in effect. Accordingly, defendant's Government Rates Schedules Nos. 1, 2, 3, not having been filed with or approved by the Interstate Commerce Commission, were invalid; the existing rates under MF I.C.C. No. 3, not having been changed by action of the Interstate Commerce Commission, remain in effect and applicable.[1]

Defendant's argument that Section 65 of Title 49, U.S.C.A. (prior to amendment in 1945) provides an exception to the rigid rule of Section 317 is of no merit. The portion of Section 65 relied upon by defendant "  *   *   *   entitles 'military or naval property of the United States moving for military or naval and not for civil use' to *land-grant rates."* (Emphasis supplied.)   Northern Pacific R. Co. v. United States, 330 U.S. 248, 250, 67 S.Ct. 747, 748, 91 L.Ed. 876.

Finally, while the applicable law is clear and affords defendant no relief, it is apparent that in dealing with the defendant the Government "[did] not let [its] left hand know what [its] right hand [was doing]. While it is regrettable that defendant should be the victim of such circumstances, the court is not empowered to use such action, or lack of

1. For further discussion of this matter see:   Missouri Pac. R. Co. v. United States, 71 Ct.Cl. 650, 661, 662; Hughes Transportation, Inc., v. United States, 1954, 121 F.Supp. 212, 128 Ct.Cl. 221; United States v. Kansas City Southern Ry. Co., D.C.W.D.Mo., W.D.1953, 116 F. Supp. 484; Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183, and Great Northern R. Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703.

action, by the Government as the basis for exoneration.

Judgment for plaintiff may be entered.

### Supplemental Opinion.

In the opinion of the court, the foregoing memorandum is adequate compliance with Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. and no additional findings or conclusions are thought necessary.